IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANA HAHN, | ) |
|     Plaintiff, | ) ) ) ) |
| v. | ) )   Case No. 22-cv-00369-GKF-SH |
| OHIO SECURITY INSURANCE COMPANY d/b/a LIBERTY MUTUAL INSURANCE, | ) ) ) ) ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant's motion to compel non-party LDH Consultants Inc. ("LDH") and its president Lonnie Huff ("Huff") to appear for a deposition. Plaintiff has listed Huff as a witness and LDH's records and reports as exhibits. The information sought is relevant, and Plaintiff has offered no facts showing burden. The discovery will be allowed.

**Background**

On August 1, 2021, Plaintiff Diana Hahn ("Hahn") brought this suit against Ohio Security Insurance Company d/b/a Liberty Mutual Insurance ("Ohio Security") for claims relating to a motor vehicle accident in 2017. (ECF No. 2-1.) Specifically, Hahn asserts that she was covered by uninsured/underinsured motorist ("UM") coverage and that Ohio Security underpaid on her claim.[1] (*Id.* ¶¶ 9, 14.) As a result, Hahn is asserting claims for breach of contract and bad faith and seeks damages. (*Id.* ¶¶ 22-29; *see also* ECF No. 13 at 1.)

---

[1] The parties agree that Ohio Security tendered $184,797.16 to Hahn for her claim. (ECF No. 13 at 3.)

Prior to filing her lawsuit, a prior attorney asked LDH to determine the effects of Hahn's 2017 injury "on her earning potential, loss of household services, and future medical costs." (ECF No. 25-2.) Huff, a rehabilitation consultant and president of LDH, then prepared a report analyzing these issues. (*Id.*) Huff's report concluded that Hahn's injury would result in at least $951,211.24 in medical-related damages, $75,031.52 in loss of household services, and $115,892.70 in lost earnings. (*Id.* at 11.) Huff stated he interviewed Hahn and conducted testing and other investigations in preparing his report. (*Id.* at 1.) Plaintiff's prior attorney presented Huff's report to Ohio Security in December 2020, as supporting her computation from damages and in an effort to settle her insurance claim. (ECF No. 25-1 at 8-10.)

After the lawsuit was filed, Plaintiff's current counsel listed Huff on her initial disclosures as "testifying to Plaintiff's physical conditions, injuries, related treatment, and expenses resulting from the subject accident." (ECF No. 25 at 2.[2]) Plaintiff has since provided her preliminary witness and exhibit lists, which include Huff as a factual witness for these same topics. (ECF No. 28-2 at 2.) Plaintiff also lists exhibits that include "Records/reports from LDH Consultants." (*Id.* at 3.) Huff is not listed as an expert witness. (ECF No. 28-3.) However, Plaintiff has listed Richard N. Cary as an expert on claims handling and compliance with industry standards (ECF No. 28-3 at 1), and Mr. Cary's report references the LDH "settlement presentation of her claim which totaled $1,142,135.46" (ECF No. 29-3 at 2).

According to Ohio Security, its attorneys contacted Huff's office and arranged for his deposition with the agreement of Plaintiff's counsel on October 25, 2022. (ECF No.

---

[2] Ohio Security does not attach a copy of these initial disclosures, but Hahn does not dispute this representation in her response.

25 at 3.) An office manager at LDH later agreed to the deposition occurring on December 13, 2022, at 1:30 p.m. (ECF No. 25-3.) Ohio Security then issued a document subpoena to LDH, seeking all of its records relating to Hahn and her case, a list of cases where LDH served as an expert witness in the past five years, and five years of financial records relating to LDH's income from certain litigation-related sources. (ECF No. 25-4.) On November 28, 2022, Huff reportedly contacted Ohio Security's counsel to state he was unilaterally cancelling his deposition, because Plaintiff had new counsel, he needed to see Plaintiff again, and his report was incomplete. (ECF No. 25 at 3; *see also* ECF Nos. 25-8 (letter confirming phone conversation) & 25-5 (letter cancelling deposition).) Huff also stated that his attorneys would respond and object to the document subpoena. (ECF No. 25 at 3.)

Plaintiff's counsel—stating it was acting on behalf of Huff/LDH—then objected to the document subpoena on the grounds that it was overly broad, unduly burdensome, and disproportionate to the needs of the case, particularly where Plaintiff did not anticipate calling Huff as an expert witness. (ECF No. 25-6.) Plaintiff's counsel has not responded to requests to reschedule Huff's deposition or to provide any agreed-to production. (ECF No. 25 at 4; ECF No. 25-7.)

Ohio Security now files its motion to compel LDH to respond to the document subpoena and Huff to appear for deposition. (ECF No. 25.) Ohio Security argues that, because Huff's deposition was originally set by agreement, there is no procedural prerequisite for a deposition subpoena and notice. (*Id.* at 8 n.2.) Plaintiff's counsel has filed a response, apparently only on behalf of Plaintiff and not LDH/Huff, for whom

3

counsel has spoken in the past.[3] (ECF No. 28.) In that response, Plaintiff does not dispute Ohio Security's procedural argument, nor does she raise any procedural issues with respect to the document subpoena. (*See generally id*.) The Court, therefore, will focus on Plaintiff's standing, the substance of the documents requested, and the appropriateness of deposing Huff.

## Analysis

I.   **Ohio Security is Entitled to the Subpoenaed Documents**

A party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a fact of consequence in the action more or less probable than it would be without that evidence. Fed. R. Evid. 401. Proportionality, meanwhile, is a case-specific determination, looking at "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) & advisory ctte.'s note, 2015 am. While the party requesting the information should be able to explain how the information is relevant, the party claiming undue burden generally must supply the information needed for such a determination. *Id*. advisory ctte.'s note, 2015 am.[4]

---

[3] LDH and Huff also have not filed their own, separate response.

[4] "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."

### A.     The Documents Sought are Relevant

Plaintiff argues that LDH has no relevant documents, because the only relevant facts are those known to Ohio Security at the time it reviewed Hahn's claim. (ECF No. 28 at 6-11.) Plaintiff bases this argument on the assertion that "[t]he knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." (*Id.* at 6 (quoting *Buzzard v. Farmers Ins. Co.,* 1991 OK 127, 824 P.2d 1105, 1109) (emphasis removed).) Therefore, according to Plaintiff, any discovery from LDH is irrelevant, because such information was not in Ohio Security's possession when it determined her payment under the policy.

Plaintiff's arguments ignore the full elements of her two pending claims for breach of contract and bad faith. In order to recover on her claim for breach of contract, Plaintiff must show (1) formation of a contract; (2) breach of that contract; and (3) damages as a direct result of that breach. *Digital Design Grp., Inc. v. Info. Builders,* Inc., 2001 OK 21, ¶33, 24 P.3d 834, 843. For her bad faith claim, Plaintiff must show (1) she was covered under the insurer's policy and the insurer was required to take reasonable actions in handling the claim; (2) the actions of the insurer were unreasonable under the circumstances; (3) the insurer failed to deal with her fairly and act in good faith in handling her claim; and (4) the breach of the duty of good faith and fair dealing was the direct cause of any damages she sustained. *Morgan v. State Farm Mut. Auto. Ins. Co.,* 2021 OK 27, ¶13, 488 P.3d 743, 746. Plaintiff's arguments only speak to one element of her bad-faith claim—whether the actions of the insurer were unreasonable under the circumstances. Plaintiff ignores the other elements implicated by the LDH documents, particularly whether Ohio Security breached the insurance contract by underpaying on Plaintiff's claim and the amount of her damages for either claim.

More importantly, Plaintiff herself has listed Huff as a witness—to her physical condition, injuries, medical treatment, and expenses resulting from the accident—and listed LDH's report and records as exhibits. (ECF No. 28-2 at 2-3.) By so doing, Plaintiff has already endorsed the relevance of Huff's knowledge and LDH records to her claims and, presumably, Plaintiff will attempt to use this evidence to support her claims for breach of contract and bad faith. LDH's documents relating to Plaintiff or its review of her case are relevant. Similarly, information regarding LDH's prior work as an expert witness and financial dependence on such work would tend to make Huff's testimony on these essential portions of Plaintiff's claim more or less credible and, therefore, more or less likely to be true.[5]

Plaintiff also appears to argue the information sought is not relevant, because Huff will not testify as an expert and, even if he did, some of the information would be protected expert trial preparation materials under Rule 26. (*Id.* at 11, 13-14.) Plaintiff asserts that Ohio Security is seeking "expert documents from a non-expert." (*Id.* at 11.) Some of the documents sought are similar to those a testifying retained expert would be required to provide with an expert report. *See, e.g.,* Fed. R. Civ. P. 26(a)(2)(B)(v) (expert report must include a list of cases within 4 years where witness testified as expert). But, there is nothing in the rules indicating that such information may only be relevant when sought from an expert.

Similarly, it is correct that communications between a party's attorney and a retained testifying expert are, with some exceptions, protected as trial-preparation materials. *See* Fed. R. Civ. P. 26(b)(4)(C). Here, however, Plaintiff has denied retaining

---

[5] While such information may have some relevance, it still may be deemed inadmissible at trial under, e.g., Fed. R. Evid. 403.

6

LDH or Huff as a testifying expert.[6] Restrictions on expert discovery do not provide a basis for a lay witness's blanket refusal to respond to a document subpoena. To the extent any protection or privilege applies to LDH's documents, LDH must supply an appropriate privilege log. *See* LCvR 26-4.

### B. Undue Burden/Proportionality

For the most part, the documents sought by the subpoena are easily found to be proportional to the needs of this case. LDH offered specific consulting work relating to a specific accident involving Plaintiff; no party has asserted that LDH has ever done any other work related to Plaintiff. There is no reason to believe that asking for "all" documents relating to Plaintiff and her case would result in the production of anything other than documents relating to the facts at issue in this case, and the Court rejects Plaintiff's assertion that such a request is "absurd and would clearly carry an exorbitant burden on LDH" (ECF No. 28 at 13 n.5). Similarly, given LDH's line of business and history in providing expert testimony, it is not unreasonable to seek a list of cases from the past five years. The fact that four years of such history is already required from expert witnesses further supports a finding of proportionality. As Huff is regularly testifying as an expert, it is likely he has repeatedly had to provide this very information and has it on hand. Plaintiff offers no argument to the contrary.

The final category of documents sought is more troubling. Ohio Security seeks records of LDH's five-year income from attorney referrals in personal injury cases, workers' compensation examinations or treatment, and 1099s showing payments from

---

[6] Plaintiff also does not assert that Huff is an expert retained in anticipation of litigation and who is not expected to be called as a witness at trial. *See* Fed. R. Civ. P. 26(b)(4)(D) (noting party generally may not discover facts or opinions held by a consulting expert, i.e., an expert employed only for trial preparation).

law firms for medical examinations, reviews, or investigations in certain injury matters. (ECF No. 25-4 at 4.)  While potentially relevant as to Huff's credibility, a judge could find such evidence excludable at trial, making its "likely benefit" low.  *See* Fed. R. Civ. P. 26(b)(1).  Plaintiff, however, has no personal or proprietary interest in LDH's financial records and, generally, lacks standing to object on the basis of undue burden.  *See, e.g., Copeland v. C.A.A.I.R., Inc.,* No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *2 (N.D. Okla. Feb. 28, 2020).  The Court may still exercise its inherent power to limit non-proportional discovery, *id.* at *3, but LDH has provided no details of how the request will burden it. LDH has deprived the Court of information that would allow it to decide, in this particular case, that "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1).  Instead, Plaintiff just makes a blanket assertion that such discovery is always unduly burdensome.  The Court declines to adopt such a bright-line rule without any information as to the actual burden imposed.  The discovery of LDH's financial information will be allowed in the specific circumstances of this case.

## II.     Ohio Security May Depose Huff

Plaintiff does not seriously dispute that Ohio Security has the right to depose Huff. Instead, Plaintiff will agree to reschedule Huff's deposition as a "lay witness" but objects "to Ohio Security deposing Huff as an expert witness." (ECF No. 28 at 14 n.6.) Although it could affect timing or witness fees,[7] Plaintiff has not explained what practical difference it makes if Huff is deposed as a lay witness versus an expert witness.  There is no pre-authorized set of questions that are automatically allowed when questioning an expert

---

[7] *See* Fed. R. Civ. P. 26(b)(4)(A) (for retained testifying experts, requiring deposition to be scheduled after expert report is provided); *id.* 26(b)(4)(E)(i) (requiring party seeking discovery to pay reasonable fee for deposition-related time of testifying expert).

8

witness and that are necessarily disallowed when deposing a lay witness. In this case, Plaintiff apparently believes that Huff has personal knowledge of facts relating to her physical condition, injuries, medical treatment, and expenses. (ECF No. 28-2 at 2.) *See* Fed. R. Evid. 602 (noting that a lay witness must have personal knowledge to testify to a matter). Moreover, the LDH report contains Huff's opinions on multiple subjects, including Hahn's intelligence, mental abilities, inability to perform household duties, cost of future medical needs, loss of worklife expectancy, and damages. (ECF No. 25-2 at 5-11.) Plaintiff may intend to assert these are lay opinions, not based on scientific, technical, or other specialized knowledge. *Compare* Fed. R. Civ. 701 *with* 702. Ohio Security may reasonably inquire about the opinions Huff has expressed, and the bases for them, in order to fully defend against the testimony that may be presented at trial or to discover facts otherwise relevant to the claims or defenses in this case. The Court rejects Plaintiff's assertion that Huff's deposition must be artificially limited based on his current status as a lay witness or be limited solely to the life care plan.

IT IS THEREFORE ORDERED that Defendant Ohio Security Insurance Company's Motion to Compel Response to Subpoena Duces Tecum to LDH Consultant's Inc. and Deposition of Lonnie Huff (ECF No. 25) is GRANTED. LDH shall respond to the document subpoena (ECF No. 25-4) by February 28, 2023. Ohio Security may depose Huff.

ORDERED this 21st day of February, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT